RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0133p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

MAI ROQUEMORE,

               *Plaintiff-Appellant,*

      *v.*

E.R. EXPRESS; PAVEL KARKHU,

                     *Defendants,*

AMERICAN BRIDGE MANUFACTURING;
SHERMAN BROTHERS TRUCKING;
TRANS/MID-AMERICA INC.,

                *Defendants-Appellees.*

No. 10-1757

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 08-12025—Denise Page Hood, District Judge.

Argued: October 6, 2011

Decided and Filed: May 14, 2012

Before: BOGGS and STRANCH, Circuit Judges; and CARR, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Sima Girish Patel, FIEGER, FIEGER, KENNEY, JOHNSON & GIROUX, P.C., Southfield, Michigan, for Appellant. Megan K. Cavanagh, GARAN LUCOW MILLER, P.C., Detroit, Michigan, Ernest R. Bazzana, PLUNKETT COONEY, Detroit, Michigan, for Appellees. **ON BRIEF:** Michael R. Dezsi, FIEGER, FIEGER, KENNEY, JOHNSON & GIROUX, P.C., Southfield, Michigan, for Appellant. Megan K. Cavanagh, John J. Gillooly, GARAN LUCOW MILLER, P.C., Detroit, Michigan, Ernest R. Bazzana, PLUNKETT COONEY, Detroit, Michigan, for Appellees.

_____

[*] The Honorable James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

———————————

**OPINION**

———————————

BOGGS, Circuit Judge.  Nickie Donald died when an oversized twenty-eight-ton beam struck an overpass, fell off the back of the trailer transporting it, and crushed the cab of his truck, which was on the highway behind the trailer carrying the beam.  Mai Roquemore, representing the estate of the decedent, brought a diversity wrongful death action.  The district court granted motions for summary judgment in favor of three defendants—the companies who were responsible for loading the beam on the trailer, hiring the trucking company, and obtaining permits.  The court construed Michigan Compiled Laws § 257.719(1) as forbidding recovery from anyone other than the "owner of a vehicle that collides with a lawfully established bridge."  We reverse, as the district court erred in construing Michigan law to preclude liability against the three defendants.

**I**

Pavel Karkhu, an employee of E.R. Express, was driving the trailer carrying the beam from Oregon to Michigan. American Bridge Manufacturing loaded the beam onto the trailer in Oregon.  American Bridge had hired Sherman Brothers Trucking to arrange for a carrier to transport the beam to Michigan.  Sherman Brothers, in turn, hired E.R. Express, and contracted with Trans/Mid-America to obtain the requisite permits to haul the beam to Michigan.  American Bridge recorded that the height of the load, with the beam on the trailer, was 13 feet, 9 inches, and provided that information to Trans/Mid-America.  It was, in fact, greater than 13 feet, 10.5 inches—too tall to pass under the Warren Avenue Bridge on I-94 in Michigan.

When Karkhu came to the overpass, the beam struck the bridge and dislodged it from the trailer.  The beam hurtled towards Donald's trailer and smashed his cab. Donald was trapped with no chance of rescue. He bled until he lost consciousness, and then died.  A special crane was needed to remove the beam and recover Donald's body.

Mai Roquemore, personal representative of Donald's estate, filed a diversity action against American Bridge (who loaded the beam on the trailer), Sherman Brothers (who hired E.R. Express and Trans/Mid-America), Trans/Mid-America (who obtained state transportation permits), Karkhu (the driver), and E.R. Express (Karkhu's employer). On September 28, 2009, the district court granted summary judgment for three defendants: American Bridge, Sherman Brothers, and Trans/Mid-America. On December 17, 2009, the district court approved a settlement between plaintiff and the two remaining defendants, Karkhu and E.R. Express. The district court's opinion, relying on *Farmer v. Christensen*, 229 Mich. Ct. App. 417, 581 N.W.2d 807 (1998), held that plaintiffs could only bring suit against the "owner of a vehicle that collides with a lawfully established bridge," Mich. Comp. Laws § 257.719(1), thus precluding any action against American Bridge, Sherman Brothers, and Trans/Mid-America. Plaintiff now appeals the district court's order granting summary judgment for these three defendants.

We review an order granting a motion for summary judgment de novo. *Cavin v. Honda of America*, 346 F.3d 713 (6th Cir. 2003).

## II

This case turns on the construction of Mich. Comp. Laws § 257.719(1), which provides that

> A vehicle unloaded or with load shall not exceed a height of 13 feet 6 inches. The owner of a vehicle that collides with a lawfully established bridge or viaduct is liable for all damage and injury resulting from a collision caused by the height of the vehicle, whether the clearance of the bridge or viaduct is posted or not.

The "seminal case interpreting this statutory language" is *Farmer v. Christensen*. District Ct. Op. at 5 (citing 229 Mich. App. 417 (1998)). In *Farmer*, Christensen, the driver and owner of a truck, was hauling a large gravel hopper, when it struck an overpass. The hopper fell off the back of the truck, and struck plaintiff's car. Plaintiffs brought a common-law negligence suit against Christensen and the Michigan

Department of Transportation ("MDOT").  After MDOT reached a consent judgment with plaintiffs, it filed a cross-claim against Christensen for indemnification.  The trial court granted a summary disposition for Christensen.  The issue on appeal in *Farmer* was whether MDOT could seek indemnification under § 719(1) from Christensen, as the owner of the vehicle.

The *Farmer* court began by breaking down the statute.  "The first sentence of § 719(1) establishes the mandatory duty of care, i.e., a vehicle's height must not exceed 13 feet, 6 inches." *Id.* at 420.  The "violation of the statutory duty of care, standing alone, would be enough to establish a prima facie case of negligence." *Ibid.*  Next, the court turns to the second part of the statute, which "does not merely create a presumption of negligence, but rather . . . allows for a finding of absolute liability." *Id.* at 420-21.  MDOT argued that the owner of the vehicle is "absolutely liable for all damage and injury resulting from his truck's collision with the overpass." *Id.* at 421.

Pursuant to M.C.L. § 257.725, Christensen was required to, but "failed to apply for" a "special-use permit from the MDOT." *Id.* at 425.  Had Christensen in fact obtained a permit, it would have contained a "hold harmless" clause, agreeing to "indemnify and save harmless" MDOT. *Ibid.*  Weighing the equities, the court found that "a contract [between MDOT and Christensen] should be implied in law and its indemnification clause enforced." *Id.* at 425-26.  The court held "that the MDOT is entitled to indemnification on the basis of an implied contract." *Ibid.*  The court held that MDOT "established a basic right to indemnification" based on the assignment of absolute liability under § 719 and Christensen "was absolutely liable for all damage and injury resulting from the collision of his overheight vehicle with the overpass." *Id.* at 424.  Thus, as between Christensen and MDOT, the operation of § 719(1) ran to the benefit of MDOT, resulting in the owner, Christensen, bearing all liability, including the liability that initially attached to MDOT by the consent judgment. *See Klinke v. Mitsubishi Motors Corp.*, 581 N.W.2d 272, 281 n.8 (Mich. 1998) (Kelly, J., dissenting) (observing that the Court of Appeals in *Farmer* applied § 719(1) to the benefit of MDOT).

**III**

In this case, the defendants argue that application of § 719(1) and *Farmer* bars the plaintiff from proceeding against them in this common-law negligence action and that the plaintiff's only recourse is against the truck owner, E.R. Express. The defendants rely on *Farmer*, which broadly construed *Flint* & *P.M.R. Co.* v. *Lull,* 28 Mich. 510, 1874 WL 6343 (Mich. 1874), remarking that "[w]here a regulatory statute establishes a mandatory duty and imposes absolute liability for a breach of that duty, the common-law defense of comparative negligence is not available." *Farmer*, 229 Mich. App. at 423-24. This dictum does not control this case.

The party for whose benefit the statute runs, MDOT, is not a named defendant in this case. *Farmer* does not fix absolute liability on the vehicle owner to the complete exclusion of any concurrent or intervening cause that may be proved or to the complete exclusion of comparative negligence or joint and several liability. *Lull* concerned a cause of action brought directly under an absolute-liability statute, so in that case the Michigan Supreme Court held that the common-law defense of contributory negligence did not apply. 1874 WL 6343, at *1. The court explained, however, that "[w]ere this a common-law action it is clear that such contributory negligence would be a defense." *Id* at *3.

The plaintiff did not bring this lawsuit directly under § 719(1). The case before us, like *Farmer,* is a common-law negligence action to which *Lull,* by its express language, has no application. Because this is a common-law negligence case, all of the ordinary Michigan principles concerning common-law liability and defenses apply. Section 719(1) and *Farmer* do not provide the defendants with a complete defense to the claim of common-law negligence.

In sum, Defendants argue that *Farmer* compels a result where only the owner of the vehicle can be liable for all damages, and no liability can fall on any other party. However, *Farmer*, at most, implies that others who pay—by settlement, judgment, or

grace—may be able to shift their liability to an owner, not that they can have no liability in the first instance. The mere fact that liability for "all damages and injury" is "fixed" on the owner of the vehicle "even where concurrent or intervening acts of negligence precipitate" the accident, does not imply that the tortfeasors responsible for those "concurrent or intervening acts" cannot also be liable. Simply finding that one party is "absolutely liable" for "all damages" does not require that no other parties can be liable.

Otherwise, a plaintiff injured by the joint negligence of an owner and others would receive nothing if the owner is judgment-proof, cannot be reached, or cannot be found. This alternate construction should not be presumed without the clearest indication in the statute. Nothing in the words of the statute, or any plausible policy argument, precludes American Bridge, Sherman Brothers, or Trans/Mid-America from being found liable for a portion of the damages resulting from the accident.

The district court erred in holding that Defendants American Bridge, Sherman Brothers, and Trans/Mid-America could not be held liable under § 719(1).

\*     \*     \*

The judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.